# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FAIRFAX PORTFOLIO, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 11-2007-CM** |
| **OWENS CORNING INSULATING** ) | |
| **SYSTEMS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff/counterdefendant Fairfax Portfolio, LLC, originally brought this landlord–tenant dispute in the District Court of Wyandotte County, Kansas.  Defendant/counterclaimant Owens Corning Insulating Systems, LLC, removed the case to this court on diversity grounds.  Before the court are the parties' cross-motions for summary judgment (Docs. 29, 31), and plaintiff's motion to certify a question of law (Doc. 33).

The issue before the court—as framed by plaintiff—is whether, under Kansas law, a tenant who, at the expiration or termination of a lease of a commercial warehouse, retains possession of the property in order to repair structural damage is considered a "holdover tenant" for the time necessary for the tenant to make the repairs.  (*See* Docs. 30 at 9; 34 at 1.)  Plaintiff asks the court to certify this question to the Kansas Supreme Court, arguing that the question is novel and unsettled, and an answer would be dispositive.

However, the terms of the agreement do not trigger the holdover provision on these facts, and the court cannot determine whether defendant should be considered a holdover tenant by operation of law because facts material to resolution of that question are disputed.  The court therefore declines to

certify the question of law and denies the motions for summary judgment.  The court also orders

additional briefing as set out below.

## I.    Factual Background

The underlying facts are largely undisputed.  On or about January 3, 2008, plaintiff and

defendant entered into a lease agreement under which plaintiff agreed to lease certain real

property—a warehouse storage facility—to defendant.  The gross rent under the agreement was

$21,051.04 per month.  The initial term of the agreement terminated on December 3, 2008; the

parties entered an amendment to the lease extending the term until December 3, 2009.

Under the terms of the lease agreement, defendant paid a security deposit of $42,102.08,

which was to be returned within thirty days of the expiration of the agreement, unless it was applied

to non-payment of rent or other default.  The lease terms required defendant to return the premises in

good condition and repair, excepting normal wear and tear.  The lease agreement also contained a

surrender and holdover provision, which requires the property to be surrendered in broom-clean

condition and in good repair, and states "if Tenant holds over after the expiration of the Initial Term

or Renewal Term . . . Tenant shall become a tenant on a month to month tenancy at monthly rent

equal to 150% of the Rent in effect during the last full month of the preceding term."  (Doc. 30-1 at

9.)

Per the terms of the agreement, defendant vacated the premises in December 2009.  But

plaintiff notified defendant that there was damage to the property.  Plaintiff and defendant agreed

that defendant would repair damage to the premises, and plaintiff returned keys to defendant so that

defendant could make repairs.  Defendant engaged contractors to perform work on the premises, and

defendant paid for the work performed.  Plaintiff repeatedly notified defendant that it would hold

defendant accountable in accord with the lease agreement.  Defendant spent over $40,000 on the repairs.  All repairs were completed to plaintiff's satisfaction by April 19, 2010.

It is uncontroverted that the repair work defendant performed after expiration of the lease term included general cleaning of the property, repair to some columns, window repair, restoration of walls, and repair to door panels of the dock doors.  Some of the columns had to be straightened; others had to be totally replaced.

During this time, defendant asserts that it did not inhibit plaintiff's right to enter or occupy the premises.  Defendant also argues that the damage was not "structural"; there was no danger to any occupant of the premises; and the premises could have been used while the repairs were being made.  Defendant's expert opines that the repair activities did not compromise the premises' ability to be re-leased, but that there were no lessees interested in leasing the premises between December 3, 2009 and April 19, 2010, because the premises were older and had lower ceilings than prospective tenants wanted.[1]  Defendant's counterclaim seeks the return of its security deposit.

Plaintiff asserts that defendant's possession of the premises did inhibit plaintiff's right to enter or occupy the premises.  And plaintiff contends that the damage was structural and affected the structural integrity of the building.  In support, plaintiff cites deposition testimony for the proposition that, while one of the columns was being cut out, an apparatus was required to support the roof.

Plaintiff asserts that, until the repairs were complete, plaintiff was unable to lease the premises to any other tenant.  Plaintiff seeks payment for rent at the holdover rate and other damages

---

[1]  In support, defendant relies on its expert witness disclosures: Defendant's Disclosure of Harold Walters as Non-Retained Expert Witness, and Defendant's Disclosure of Joe Vaught as Non-Retained Expert Witness.  Plaintiff suggests that defendant cannot cite its expert disclosures to support a summary judgment motion because it is not testimony under oath.  In reply, defendant offers its expert's affidavit.  (*See* Docs. 40-2, 40-3.)  The court believes that under Rule 56, for purposes of resolving the pending motions, it can consider the affidavit submitted.

under the contract, and plaintiff has held on to defendant's security deposit in partial satisfaction of this unpaid rent.

## II.    Should the Court Certify the Question of Law to the Kansas Supreme Court?

Pursuant to the Uniform Certification of Questions of Law Act, the Kansas Supreme Court

> may answer questions of law certified to it by . . . a United States district court . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Kan. Stat. Ann. § 60-3201.  Certification must  "conserve the time, energy, and resources of the parties as well as of the court itself."  *Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999).  Whether these values are served by certification rests within the sound discretion of this court.  *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *Hartford Ins. Co. v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005).  Although certification may be particularly appropriate where the legal question at issue is novel and the applicable state law is unsettled, certification is never compelled.  *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 900 n.1 (10th Cir. 2005).  And the court does not believe that certification is compelled here.  This court is often required to predict how the Kansas courts would decide particular questions of state law.  Although the Kansas Supreme Court has not decided the particular question presented by this set of facts, there are materials, discussed below, that provide guidance on this issue.  And regardless, outstanding questions of fact render certification at this point premature.  Accordingly, the court cannot find that certification would conserve the time, energy, and resources of the parties or the court.  The motion for certification is denied.

## III.    Is Either Party Entitled to Summary Judgment?

**A.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The filing of cross-motions for summary judgment does not change the standard of review.  *James Barlow Family Ltd. P'ship v. David M. Munson Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) ("Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.").  Factual assertions must be supported by citation to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

**B.     Analysis**

**Terms of the Lease Agreement**

First, plaintiff argues that it is entitled to summary judgment because the terms of the lease create a holdover tenancy where property is not returned in proper condition.  The court disagrees. The terms of the lease do not unambiguously dictate that defendant should be treated as a holdover tenant on the facts presented.[2]

---

[2]  There is no suggestion by either party that defendant defaulted on the lease as defined in
(continued...)

The parties focus on Sections 10 and 18.  Section 10 sets out defendant's maintenance and repair obligations.  Section 18 of the lease agreement is entitled "Surrender of Premises and Holding Over."  It states, in relevant part:

> Upon the expiration of this lease . . . Tenant shall immediately surrender the Premises to Landlord . . . in broom-clean condition and in good order, condition and repair, except for ordinary wear and tear . . . .
> If Tenant holds over after the expiration of the . . . [Term] . . . Tenant shall become a tenant on a month-to-month tenancy at monthly rent equal to 150% of the Rent in effect during the last full month of the preceding term.

(Doc. 30-1 at 9.)

Plaintiff's argument is that this language creates a holdover where property is not surrendered *in proper condition and repair*, *i.e.*, that the surrender conditions and holdover provision are conjunctive.  Defendant counters that the agreement does not create a holdover where repair activities are performed after the expiration of the lease, *i.e.*, that the two paragraphs of Section 18 are disjunctive.

Under Kansas law, the primary rule in interpreting contracts is to ascertain the intentions of the parties and to give effect to that intent.  *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 674 (Kan. Ct. App. 1996) (citing *Hollenbeck v. Household Bank*, 829 P.2d 903, 906 (Kan. 1992)).  If the contract is plain and unambiguous, the parties' intent should be determined from within the contract's four corners and without review of extrinsic or parole evidence.  *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887 (Kan. 1992).  Whether a contract is ambiguous is a question of law for the court.  *City of Arkansas City v. Bruton*, 166 P.3d 992, 1001 (Kan. 2007).  However, if the court determines a contract to be ambiguous, the question of fact as to the intent of the parties

---

[2] (...continued)
Section 17 of the lease agreement.

becomes paramount and summary judgment is improper. *Integrated Living Cmties., Inc. v. Homestead, Co.*, L.C., 106 F. Supp. 2d 1141, 1143 (D. Kan. 2000).

Section 18 of the lease agreement requires defendant, upon expiration of the lease term, to surrender the property in good repair. It then states, in the next paragraph, that a tenant "hold[ing] over" after the expiration of the lease becomes a month-to-month tenant at a rate of 150 percent rent. Although these surrender conditions and holdover provisions appear in the same section of the lease agreement, they are in two distinct paragraphs. Plaintiff points to this proximity for the proposition that failure to surrender the property "in broom-clean condition"—as opposed to mere failure to surrender—triggers the holdover provision. The court is unconvinced.

The court finds that the contract is not ambiguous. Ambiguity does not arise unless there is genuine uncertainty as to which of two or more possible meanings is proper; where in common sense there is no ambiguity, the court will not strain to create ambiguity. *Crescent Oil Co., Inc., v. Federated Mut. Ins. Co.*, 888 P.2d 869, 872–73 (Kan. Ct. App. 1995). Despite plaintiff's arguments, the plain and ordinary meaning of the term "holding over" in this section of the lease agreement refers to the failure to surrender property, not failure to make required repairs or failure to surrender *in a particular condition*. *See* 49 Am. Jur. 2d § 354 (1995) (stating that "[a] tenant who does not abandon or relinquish the premises after the lease expires or is lawfully declared terminated by the lessor, but who remains in possession, is holding over"; Black's Law Dictionary (9th Ed. 2009) (defining "holdover tenant" as "[a] person who remains in possession of real property after a previous tenancy (esp. one under a lease) expires, thus giving rise to a tenancy at sufferance"). Plaintiff offers no evidence that the parties intended any other meaning, and it would defy common sense to read section 18 as triggering the holdover provision where a tenant has surrendered the property but makes certain repairs after the expiration of the lease.

This conclusion does not end the court's inquiry, however.  The parties have briefed and argued the issue of whether, putting aside the terms of the lease, the defendant should nevertheless be treated as a holdover tenant by operation of law.  Although the question is raised by defendant's briefing, this appears to be the question plaintiff seeks to certify.

**Kansas and Extra-Jurisdictional Case Law on Holdover Tenancy by Operation of Law**

In opposing plaintiff's motion for summary judgment, defendant cites various cases for the proposition that "a tenant who has vacated the premises, even if it has breached a covenant to repair, is not liable for holdover rent while the repairs are being made and the premises unleased."  (Doc. 32 at 8.)  Plaintiff argues that the case law does not support defendant because it indicates a holdover tenancy would be imposed, by operation of law, on the "undisputed" facts of this case.  There are no Kansas cases directly on point.

Defendant's request that the court grant judgment in its favor on plaintiff's claim fails for two reasons.  First, the case law suggests that whether the tenant's failure to repair amounts to a holdover "is a question of fact to be decided in light of the surrounding circumstances."  *Consumers Distrib. Co. Ltd. v. Hermann*, 812 P.2d 1274, 1277 (Nev. 1991).  Second, and more importantly, these cases clearly indicate that the nature of the damage and the usability and/or leasability of the property are factors that would be material to the court's inquiry, and despite the parties' protestations, these facts are disputed.

For example, in reversing the trial court's determination that a tenant's repairs to property after expiration of the lease amounted to a holdover, the Nevada Supreme Court found the following facts significant: (1) the extent of the damage to the building, including the cost of repairs relative to the cost of rent or security; (2) the landlord's efforts to relet; (3) time that the tenant had vacated and surrounding circumstances; (4) whether the landlord notified the tenant of intent to impose holdover;

(5) the landord's diligence in informing the tenant what repairs it would require; and (6) who possessed keys and paid utility bills. *Consumers Distrib. Co. Ltd.*, 812 P.2d at 1277–78.  A New York appeals court noted that the lessee's retention of a set of keys and periodic use of the property to make repairs was insufficient where the premises had been vacated; the landlords transferred all of the services and taxes to themselves; the landlords accepted, without objection, tender of the final rental payment; and the landlords made efforts to lease or sell during the time the lessee was making repairs. Also significant to the court in that case was the provision, in the lease, for consequential damages due to a breach of a covenant to repair. *Charlebois v. Carisbrook Indus., Inc.*, 803 N.Y.S.2d 795, 797 (N.Y. App. Div. 2005).

In the instant case, it is undisputed that (1) the damage to the building was over $40,000—the cost of two month's rent; (2) defendant had removed its property and employees from the warehouse at the expiration of the lease; (3) the parties agreed defendant would make certain repairs; (4) plaintiff repeatedly informed defendant that it would hold defendant liable under the terms of the lease, and at least in February, 2010, specified that it considered defendant a holdover tenant; and (5) there is no evidence that plaintiff tried to relet the premises.  However, the nature of the damage and the subsequent repairs is a material question of fact.  The parties' repeated claims that the facts are undisputed is disingenuous.  Each party implicitly asks the court to evaluate conflicting evidence and determine credibility of witnesses regarding the nature of the damage to the premises.  The court will not do so.  The parties' requests for summary judgment are denied.

**Additional Briefing**

Having concluded that summary judgment must be denied, the court has concerns, however, with whether the parties can proceed to trial on this "constructive holdover" theory.  The pretrial order indicates that both plaintiff's and defendant's claims are for breach of contract.  (Doc. 28 at 1.)

Even if the Kansas courts would permit a landlord to pursue damages based on a "constructive holdover" theory, the court is uncertain that such a theory can arise from a breach of contract claim. The court has already ruled here that defendant's conduct in effecting repairs after expiration of the lease was not "holding over" under the unambiguous terms of the lease. And plaintiff cannot assert a cause of action not raised in the complaint or preserved in the pretrial order.

Plaintiff is therefore directed to show cause why it should be permitted to pursue this "constructive holdover" theory at trial. Plaintiff's brief must be filed by Friday March 3, 2012, and shall not exceed eight (8) pages. Defendant's response shall be due no later than fourteen (14) days after plaintiff's brief is filed, and shall not exceed eight (8) pages. Plaintiff's reply, if any, shall be due no later than fourteen (14) days after defendant's response is filed, and shall not exceed four (4) pages.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Certify Question of Law (Doc. 33) is denied.

**IT IS FURTHER ORDERED** that defendant's Cross-Motion for Summary Judgment on Plaintiff's Claim and Motion for Summary Judgment on Defendant's Counterclaim (Doc. 31) is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Summary Judgment to Plaintiff's Position (Doc. 29) is denied.

**IT IS FURTHER ORDERED** that plaintiff show cause why it should be permitted to pursue a "constructive holdover" theory at trial. Plaintiff's brief must be filed by Friday, March 3, 2012, and shall not exceed eight (8) pages. Defendant's response shall be due no later than fourteen (14) days after plaintiff's brief is filed, and shall not exceed eight (8) pages. Plaintiff's reply, if any,

shall be due no later than fourteen (14) days after defendant's response is filed, and shall not exceed four (4) pages.

      Dated this 17th day of January 2012, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**