IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FAIRFAX PORTFOLIO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-2007 CM/KGG |
| | ) |
| OWENS CORNING INSULATING SYSTEMS, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONSTRUCTIVE HOLDOVER THEORY

The Court has ordered that plaintiff show cause why it should be permitted to pursue its constructive holdover theory at trial when both parties' claims, as stated in the Pretrial Order, are for breach of contract.

### INTRODUCTION

Plaintiff should be permitted to pursue its constructive holdover theory at trial. Holdover tenancies are always rooted in contract law. By definition, a holdover tenancy cannot develop without the existence – and breach – of a valid lease agreement. Although there is no case law directly on point to the issue of whether a party can pursue a constructive holdover theory when the claims noted in the pretrial order are for breach of contract, there are plenty of cases that imply such a course in the litigation is acceptable.

### ARGUMENT AND AUTHORITIES

By now, all parties to the present litigation are well aware that "when a tenant holds over his term with the consent of the landlord, express or implied,

the law implies a continuation of the original tenancy upon the same terms and conditions." *Becker v. McFadden*, 221 Kan. 552, 555 (1977). Thus, holdover tenancies are premised on a breach of the lease agreement. Without a breach of the lease agreement/contract, there would be no holdover tenancy.

Although there is no case directly on point, there are a number of cases that imply a party can pursue damages based on a constructive holdover theory when that party has only asserted a breach of contract claim.

For example, in *Becker*, the plaintiff sought to "recover the balance claimed to be due under a lease agreement," and to repossess the premises after the defendant allegedly became a holdover tenant. 221 Kan. at 552. The trial court determined that the parties had entered into an oral lease with regard to the premises; that the lease terminated November 1, 1974; that plaintiff notified defendants that they were expected to vacate upon the lease's termination; and that, when the defendants did not vacate on November 1st, they became holdover tenants. *Id.* at 553. On appeal, however, the Kansas Supreme Court reversed the district court's determination based upon the plaintiff's failure to comply with K.S.A. 58-2506, which requires landlords to provide tenants of farmland with notice to vacate before March 1st of each year. *Id.* at 554-55.

Essentially, *Becker* involved an action founded upon the breach of a lease agreement after the lessee allegedly became a holdover tenant. In the context of the present case, *Becker* supports plaintiff's contention that it can pursue damages based upon a constructive holdover theory when the plaintiff has asserted a claim for breach of contract.

2

There are other, more applicable cases from outside of this Court's jurisdiction. For example, in *Capella III, L.L.C. v. Wilcox*, the defendants (Wilcox and Dabbert) had leased space at a shopping center for the purpose of operating a dog training business. 940 N.E.2d 1026, 1028-29 (Ohio App. 2010). Although the lease ended in April of 2005, Wilcox remained on the premises and continued to pay rent, which the shopping center accepted. *Id.* at 1029. Eventually the shopping center was acquired by the plaintiffs; a few months later, Wilcox missed his monthly payment. *Id.* By the time Wilcox vacated, he owed plaintiffs over $21,000. *Id.* The plaintiffs sued for breach of contract. *Id.* The court noted that "[i]n the complaint, appellants acknowledged that the lease had expired, but they alleged that a holdover tenancy existed." *Id.* The court then discussed the common law in Ohio with regard to holdover tenancies. *Id.* at 1031. Although the issue was whether Dabbert, who did not remain on the premises beyond the expiration of the lease, was liable as a holdover tenant, the court explained that, at least with regard to Wilcox, a holdover tenancy was implied. *Id.* at 1032. Thus, based upon the plaintiffs' breach of contract claim, Wilcox owed unpaid rent to the plaintiff as a holdover tenant.

In *Eagle Watch Investments, Inc. v. Smith*, the parties had entered into a farm lease agreement, set to begin in October of 1985, and continuing through October of 1988. 924 P.2d 257, 258 (Mont. 1996). The agreement also included options to extend the term of the lease and to purchase the farmland. *Id.* The tenants eventually extended their lease by two years to the fall of 1990. *Id.* at 259. By 1991, the plaintiff filed suit "to recover payments from the [tenants]

pursuant to the written agreement." *Id.* at 259. The district court concluded that the tenants became holdover tenants after their lease expired. *Id.* One of the issues on appeal was whether the district court erred in finding that the defendants were holdover tenants for the time they occupied the premises after October, 1990; the defendants argued that a second contract between the plaintiff, the defendants, and the Conservation Reserve Program (CRP) effectively extended their lease term. *Id.* at 261-62. After discussing state law with regard to holdover tenancies, the court held that the CRP contract did not extend the lease agreement between the plaintiff and defendants, and that, as a result, the defendants had become holdover tenants upon the expiration of their lease. *Id.* at 263. Thus, the plaintiffs were able to recover damages from the defendants based upon a claim for breach of contract, in which the defendants owed rent as holdover tenants.

There are still other cases that involve similar scenarios in which a plaintiff seeks damages from a defendant on a breach of contract claim when that defendant has become a holdover tenant. *See, e.g., Spodek v. U.S. Postal Service*, 35 F.Supp.2d 160, 162 (D. Mass. 1999) (plaintiff was permitted to pursue breach of contract claim against defendant when defendant continued to occupy plaintiff's property long after the lease expired); *Modeer v. U.S.*, 68 Fed.Cl. 131, 134-35 (2005) (applying the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 as the "jurisdictional basis" to plaintiffs' claim that the EPA became a holdover tenant when it "overstayed the term of the lease in order to complete the cleanup required by the lease.") In each of these cases, the courts

applied the jurisdiction's common or statutory laws to the issue of holdover tenancy; in other words, the issue of holdover tenancy was not governed by the lease itself, but rather the landlord/tenant laws of each jurisdiction.

Finally, Fairfax's stance is additionally supported by *Allenfield Associates v. United States*, which explained as follows:

> A lessee who holds over after the expiration of the term of the lease and fails to vacate the property can be held liable to the lessor *under a breach of contract theory for breaching is contractual duty to vacate the premises at the expiration of the lease*, or, in the alternative, can be held liable under a takings theory for temporarily taking the lessor's property without just compensation.

40 Fed.Cl. 471, 487 (Fed.Cl.1998) (emphasis added).

Here, this case runs parallel to *Capella*. In both cases, the plaintiffs filed suit premised upon a claim for breach of contract, more specifically, the breach of the lease agreement. Also in both cases, the plaintiffs alleged that the defendants had entered into holdover tenancies. Finally, the holdover tenancy was not analyzed based upon a holdover tenancy clause in the lease agreement, but rather, was considered with reference to jurisdictional landlord/tenant laws. *Capella*, along with other similar cases, support plaintiff's contention that it should be permitted to pursue damages against the defendant as a holdover tenants based upon plaintiff's breach of contract claim.

In this case, defendant remained in possession of the property for a number of months after the end of the lease because defendant was in the process of conducting repairs on the real estate. That clearly makes defendant a "holdover tenant", and the lease provides that the tenant will pay rent at the rate of 150% of the contract rate if the tenant becomes a "holdover tenant".

Defendant has breached the lease by failing to pay the contract rate for those months in which defendant remained in possession while defendant was in the process of conducting repairs.

## CONCLUSION

Plaintiff should be permitted to proceed on its breach of contract claim under the theory that defendant is liable as a holdover tenant. Any allegations involving a holdover tenancy has its origins in the breach of a contract, making it a logical extension of a claim based upon a claim for a breach of contract/agreement. Furthermore, there are a significant number of cases that impliedly support plaintiff's position.

WHEREFORE, plaintiff moves this Court for its Order that plaintiff can pursue its constructive holdover theory at trial.

HASTY & ASSOCIATES, LLC

/s/ Paul Hasty, Jr.
Paul Hasty, Jr.           KS # 09132
7101 College Boulevard, Ste. 350
Overland Park, KS 66210
phasty@hastyassoc.com
(913) 317-8068
(913) 317-8058 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

I hereby certify that the above and foregoing was electronically filed on the CM/ECF system and a copy was electronically sent to the following CM/ECF participants on the 2nd day of March, 2012:

Nick Badgerow
Spencer, Fane, Britt & Browne
9401 Indian Creek Parkway
Suite 700, 40 Corporate Woods
Overland Park, KS 66210-2005

**ATTORNEYS FOR DEFENDANT**

*Paul Hasty, Jr.*
Paul Hasty, Jr.
For the Firm